[Crim. No. 14609.   Second Dist., Div. One.   Dec. 12, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. LLOYD
ADDISON BONVILLE, Defendant and Appellant.

Lloyd Addison Bonville, in pro. per., and William Haber, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jeffrey T. Miller, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—On September 26, 1968, this court filed its opinion (People v. Bonville, (Cal.App.) 71 Cal.Rptr. 851), affirming the judgment herein. No petition for rehearing was filed. On October 26, 1968, appellant filed his petition for hearing in the Supreme Court of the State of California. On November 25, 1968, the Supreme Court made its order[1] granting the petition for hearing, retransferring the cause to this court with directions to modify its opinion and refile the same with a modified dispositive order and affirming the judgment in all other respects.

A jury found defendant guilty of assault with a deadly weapon (count I), first degree robbery (count II) and that he was armed with a deadly weapon at the time, assault with a deadly weapon with intent to commit murder (count III) and attempted robbery (count IV). Prior to trial defendant admitted that in 1963 he had been convicted of burglary a felony. He appeals from the judgment.

Mr. and Mrs. Ogata own a small grocery store at 65th and Main. Around 10:45 a.m. on February 8, 1967, Mrs. Ogata, who was behind the counter, saw defendant enter the store; he approached her and asked for a bottle of Silver Satin wine.

---

[1]"Appellant's petition for hearing GRANTED and cause transferred to this court and retransferred to the Court of Appeal, Second District, Division One. That court is directed, after making appropriate modifications to the text of its opinion, to refile the same with the following dispositive order: The judgment is modified by striking therefrom the findings that as to Count II defendant was armed with a deadly weapon within the meaning of Penal Code section 12022. In all other respects the judgment is affirmed."

Mr. Ogata was in the back where some of the wine is kept; she asked him to bring a bottle of Silver Satin. Mr. Ogata came out of the back room and handed the bottle to defendant. Then defendant asked Mrs. Ogata for a bottle of Gypsy Rose wine; as she reached for it behind the counter defendant came to the side and from behind struck her in the head. She lost consciousness for a few seconds but when she regained it she was still standing; there was a lot of blood on the floor and ''all over'' her face and apron. Defendant was in front of her and hit her again ''many times''; he had a gun in his hand. She cried out for her husband but he failed to hear her. Defendant then went behind the meat counter to open a combination drawer where the cash is kept; Mrs. Ogata, about 4 feet away, watched him struggle with the drawer but he could not open it. He became angry and went to the rear where Mr. Ogata was working. She heard defendant threaten to kill her husband and sounds of fighting in the back room and saw some of the struggle for a gun. In a few minutes Mrs. Ogata saw defendant leave the store with a gun in his hand.

Mr. Ogata was working in the back room when defendant struck him a hard blow on the back of the head and then hit him at least 10 times on the front, back and side of the face; he forced Mr. Ogata to his knees, ordered him to put his head on the floor and threatened to kill him. He heard defendant say ''I'm going to kill you,'' and felt a metal object press against the base of his brain; he was acquainted with guns and heard the sound of the trigger of a pistol being pulled, but the bullet did not eject. After this Mr. Ogata tried to fight back but defendant held and hit him; he tried to reach his own gun which was fully loaded and inside his belt but was unable to pull it out. Defendant then noticed that Mr. Ogata had the weapon, laid his own gun to one side and pulled Mr. Ogata's gun from the waistband of his pants and placed it on the floor. Mr. Ogata tried to grab the gun but defendant took it, together with his own, and left the store.

During this time Mr. White, who was at a cleaners adjacent to the store, left and got into his truck which was parked near the corner headed north. He saw defendant come out of the market with blood on his shirt and what looked like a gun in his hand. Mr. White backed up his truck because he had been informed in the cleaners that ''something was going on next door,'' and remained seated in his stopped vehicle adjacent to the curb; he was only 10 to 12 feet from defendant as he

walked past the truck. Defendant crossed the intersection, then ran alongside the apartment buildings on 65th Street.

At the trial Mrs. Ogata positively identified defendant as the man who assaulted her and her husband and tried to rob the store. Her identification was based on her familiarity with defendant and his family who lived in the area and her observations of them in the store on previous occasions. She testified that when defendant entered the store she immediately recognized him as a person who had, approximately three times, previously patronized the store—"two or three times . . . he came to buy wine," and as one of a group of "kids" she had observed growing up in the neighborhood; she did not know him by name but did know him by "family connection," and knew the face; defendant's family were regular customers at the market for "maybe five, maybe six years"; she did not know defendant's address but would be able to locate the house in which he lived; she had seen members of his family in the area and walking around the next street (64th). Mrs. Ogata immediately identified defendant when he entered the store and clearly observed him then, during the time he asked her for the two bottles of wine, while he was beating her, during the time he was trying to get the cash drawer open, as he walked to the back room and as he left the store with a gun in his hand; defendant was in the store "close to 20 minutes." After the incident Mrs. Ogata gave a description of defendant to the police. While she was in the hospital recovering from her injuries she was asked by an officer, who showed her a group of approximately five photographs, if she could identify any of them as depicting the person who had assaulted her; she identified the photograph of defendant. Later a police officer asked her to view a lineup at the station; out of a police lineup of six to eight Negroes she identified defendant as the one who committed the crimes.

At the trial Mr. Ogata positively identified defendant as the man who assaulted and robbed him. When he handed the bottle of Silver Satin wine to him he immediately recognized him as a person he had seen a few times before; he testified "I think he just drop in, and his face is very familiar to one of my . . . customer's son . . . A couple of times he was at my store. I thought he was him because I saw him altogether about four or five times." After the incident Mr. Ogata gave the police a description of defendant. While he was in the hospital a police officer showed him a group of approximately

five photographs; Mr. Ogata identified defendant as the one who assaulted and robbed him. Later he was asked to go to the police station to view a lineup; out of a lineup consisting of six to eight Negroes he again identified defendant as the man who had committed the crimes.

At the trial Mr. White testified that when he saw defendant leave the market he immediately recognized him as a man who had patronized his gas station and to whom he had sold gasoline in 1965; also ''between January 1, 1967, and February 8, 1967'' he had ''more than once'' seen defendant walking down Main Street at about 67th Street (the neighborhood of the Ogata store). After the incident he described defendant to the police as the man he saw leave the Ogata store with blood on him carrying a gun. Later an officer brought a photograph to his home; a second time he brought three or four photographs and Mr. White identified defendant. He also identified defendant in a lineup of six to eight people at the police station.

Defendant and others attempted to establish an alibi—that on the morning of February 8, 1967, he was with his mother-in-law and wife in the municipal court in San Pedro where his wife was to be sentenced. Defendant testified he was released on parole September 17, 1965; denied he was present at the Ogatas' market on February 8th and struck Mr. or Mrs. Ogata; admitted having been in the market more than once before; claimed that on the morning of February 8th he accompanied his mother-in-law and wife in a cab to the San Pedro Municipal Court; denied that he had purchased gasoline from Mr. White and owned or drove a vehicle between September 1965 and March 1966; and claimed that due to a kidney condition he suffered swelling of the joints and legs and on February 8th was unable to wear shoes or run.

Appellant claims a denial of due process on the ground that the in-court identification by the three eyewitnesses was based solely on their identification of him in a police lineup that was unfair and suggestive; and prejudicial misconduct on the part of the trial judge.

At the outset it should be noted that no objection was interposed to the extensive in-court identification testimony of any of the three witnesses, Mrs. Ogata, Mr. Ogata and Mr. White. The only objection was to Mrs. Ogata's testimony that she identified defendant in the police lineup—''I am going to object to any testimony on the line-up unless we have a Gil-

bert shown." There was no objection to the same testimony by Mr. Ogata and Mr. White. If the reference to "Gilbert" related to any claim that defendant was required to participate in the lineup without the presence of counsel, the objection was not well taken for the rule of *Gilbert* v. *California*, 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], and *United States* v. *Wade*, 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], is to be given only prospective application (*People* v. *Caruso*, 68 Cal.2d 183, 184 [65 Cal.Rptr. 336, 436 P.2d 336]; *People* v. *Harris*, 67 Cal.2d 866, 872 [64 Cal.Rptr. 313, 434 P.2d 609]; *People* v. *Feggans*, 67 Cal.2d 444, 448 [62 Cal. Rptr. 419, 432 P.2d 21]; see also *Stovall* v. *Denno*, 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]) and this is a pre-*Gilbert* and *Wade* case, the lineup having occurred in March 1967 prior to the date (June 12, 1967) of the decisions in those cases. ■ Although he made no objection to the in-court identification testimony of any of the three witnesses, relying on the "fruit of the poison tree concept" (*Pointer* v. *Texas*, 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065]; *Wong Sun* v. *United States*, 371 U.S. 471, 478 [9 L.Ed.2d 441, 83 S.Ct. 407]), appellant nevertheless now urges that the in-court identification denied him due process because it was based solely on recollection "tainted" by an improperly conducted lineup. Under the state of the record even were we to find the lineup to be unfair and error in overruling his objection to Mrs. Ogata's testimony that she identified him in a police lineup, it would serve defendant little for in the transcript there are pages and pages of detailed in-court identification testimony of all three witnesses (to which no objection was made) based on an origin and source so independent of pre-trial identification as to have been entirely free of any influence of asserted police suggestion by way of photographs or lineup.

In any event, before appellant may invoke the exclusionary concept he must demonstrate that the lineup "resulted in such unfairness that it infringed his right to due process of law." (*Stovall* v. *Denno*, 388 U.S. 293, 299 [18 L.Ed.2d 1199, 1205, 87 S.Ct. 1967]; *People* v. *Caruso*, 68 Cal.2d 183, 184 [65 Cal.Rptr. 336, 436 P.2d 336]; *People* v. *Harris*, 67 Cal.2d 866, 872 [64 Cal.Rptr. 313, 434 P.2d 609].) As in *People* v. *Feggans*, 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21], and *Stovall* v. *Denno*, 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967], we have reviewed the record with respect to the lineup and can only conclude that it was neither unfair nor "so

unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law" (*Stovall* v. *Denno*, 388 U.S. 293, 302 [18 L.Ed.2d 1199, 87 S.Ct. 1967]) ; and further, that the circumstances pointing to defendant's guilt demonstrate that the identification was correct and in no way untrustworthy. The proof is clear and convincing that the in-court identification by each of the three witnesses was based solely on their own observations at the scene of defendant whom they recognized as a person with whom they were familiar.

The first pre-trial identification was made by Mrs. Ogata, Mr. Ogata and Mr. White who described defendant to the police immediately after the assault. The second was made by the three witnesses from a series of police photographs of four or five persons shown to each witness separately and from which each identified defendant. There is no evidence that defendant's photograph was made any more conspicuous than the others, that police in any manner suggested which man committed the crimes or "that the pictures were used to prime the witnesses to identify defendant." (*People* v. *Feggans,* 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21].) The fact is that all three witnesses knew defendant by face and "family connection" long before the crimes were committed, thus, it is clear that it was not the police who suggested defendant as the assailant to "prime" the witnesses but the witnesses who pointed out defendant to the police as the man they recognized at the scene to aid the officers in their investigation of the crimes. This is also true of the third pre-trial identification of defendant in the police lineup. To support his claim that the lineup was conducted in such a way as to be suggestive or conducive to mistaken identity, appellant argues that the other Negroes were "grossly" dissimilar in that they were darker and larger than he, and that Mrs. Ogata was told they had "captured" the suspect which conveyed to her that the officers had a particular person in mind, in effect pointing him out for identification. It should be noted that none of the defense testimony related to the lineup and the argument appellant now advances was not made in the court below, thus if his claim has merit it must find support in the testimony of the People's witnesses; it does not, for the record discloses nothing unfair in the manner in which the lineup was conducted. Separately, and without any verbal or other suggestion, the three witnesses identified the man they knew to be defendant in the lineup. Officer Clark told Mrs.

Ogata "we have [or "captured"] a suspect; so will you come down and take a look at it," but alone such statement was suggestive of no particular individual for it merely gave the reason the officer wanted Mrs. Ogata to accompany him to the station. At trial she was asked if the other Negroes in the line were darker than defendant and Mrs. Ogata answered, "Yes, I believe so," and then responded "yes" to if they were larger than he; from this we cannot say that there was a degree of difference as to cause defendant to stand apart from the others, but even so it could have had but little effect on her identification, for the record shows that she knew it was defendant who had assaulted her before she ever saw the lineup. The same applies to Mr. Ogata who apparently observed no difference for he said, "they look alike, but—but I know this man [defendant], his face," and to Mr. White who at the time he saw the man leave the Ogata store recognized him as defendant. It is simply not true that the other Negroes were "grossly " dissimilar to him, and while defendant may not have been as dark or as large as the others, we are not prepared to say under the facts of this case that this standing alone would constitute unfairness. (See *People* v. *Douglas,* 259 Cal.App.2d 694, 697, fn. 7 [66 Cal.Rptr. 492].)

Were we to suggest that the lineup was unfair and even had proper objection been made at the trial to the in-court identification testimony, the record fails to support appellant's claim that the latter was based exclusively on police photo and lineup identification. There here exists a set of circumstances which differentiates this case from the usual one in which the victim must identify the suspect, a stranger, solely from his memory of what he observed during the commission of the crime. All of the witnesses were familiar with defendant, all clearly observed him at the scene and none needed pre-trial identification to aid him in recalling his identity at the trial. Appellant appears not to deny that the witnesses knew him (he admitted having been in the store before) ; the thrust of his lengthy factual argument is that none of them could possibly have observed the man at the scene clearly enough to identify him. Of Mrs. Ogata, he says that since she is farsighted, probably was not wearing glasses, was hit over the head, does not remember all of the events and had "lots of blood" all over her eyes and face, she could not see her assailant, and she described him to the officer as a "dark complexioned Negro" although she selected him in a lineup of Negroes who were darker than he and at the trial

described him as "sallow, dark," thus she had no independent recollection of him and the courtroom identification was based solely on information from neighbors and police controlled photographs and lineup. Mrs. Ogata's testimony is to the contrary—before she was assaulted she immediately recognized the man when he entered the store and asked for the wine as defendant who had two or three times previously been in the store to buy wine, and as one of a group of "kids" she had observed growing up in the neighborhood; she knew his family who for five or six years had been regular customers but did not know his name, although she knew him "by family connection." Further, she clearly observed defendant as he was hitting her, trying to open the cash drawer, walking into the back room and leaving the store with gun in hand. At the trial counsel stipulated she "doesn't need glasses to see under normal circumstances" only "for reading . . . for close work." Appellant argues that Mr. Ogata could not have seen him because he was struck from the rear, is nearsighted and blood was in the area of his eyes. Mr. Ogata testified that before defendant came into the back room he recognized him as the man to whom he handed the bottle of Silver Satin—he had seen him four or five times before and his face was "very familiar" as the son of one of his customers. Appellant insists that since Mr. White was "at all times in motion" in a truck 20 feet away and conducting it through traffic he could not have seen the scar on his chin or the features well enough to identify him. Mr. White's testimony is otherwise—he had just gotten into his truck which was parked at the curb when he saw the man he immediately recognized as defendant come out of the Ogata store with a bloody shirt carrying a gun; he knew him as one to whom he had sold gas in 1965 and had seen in the neighborhood "more than once" between January 1, 1967, and February 8, 1967; then he saw defendant again from a distance of 10 to 12 feet as he passed the truck, which he had stopped after backing up.

Finally, appellant claims prejudicial misconduct on the part of the trial judge who he asserts conducted an unnecessary supplementary examination of him conveying to the jury the impression that he aligned himself with the prosecution and doubted his alibi causing the jurors to disbelieve him. Defendant's direct, cross, redirect and recross-examination is contained in 17 pages of reporter's transcript; his testimony concerned his alibi but it failed to clearly explain

all that he claimed occurred on February 8, 1967. Thus, after all counsel had completed their examination, in a supplementary examination (contained in 11 pages of transcript [out of a total of 292]) the judge questioned him concerning his independent recollection of the events of the day and why he remembered them. There is nothing about the interrogation to suggest that it was unreasonable, oppressive, unduly long[2] or an exercise in advocacy or that indicates that the judge disbelieved defendant, embarrassed him or displayed any bias.

■ While a trial judge " ' 'must not become an advocate for either party or under the guise of examining witnesses comment on the evidence or cast aspersions or ridicule on a witness' " (*People* v. *Baldwin,* 223 Cal.App.2d 720, 730 [36 Cal.Rptr. 40]), it is well settled that he may properly engage in reasonable supplementary examination of witnesses during the course of a trial to elicit or clarify testimony on material points (*People* v. *Rigney,* 55 Cal.2d 236, 241 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186]; *People* v. *Corrigan,* 48 Cal.2d 551, 555 [310 P.2d 953]); in fact it is his duty to speak up when it seems apparent to him that there is something about the testimony of a witness that should be clarified. (*People* v. *Partin,* 254 Cal.App.2d 89, 94 [62 Cal.Rptr. 59].) ■ The state of the record completely justifies the judge's attempts to obtain from defendant clear and truthful responses. "The judge was obviously seeking to elicit or clarify testimony on material points, and it is the right and the duty of a judge to conduct a trial in such a manner that the truth will be established in accordance with the rules of evidence. (*People* v. *Martinez,* 38 Cal.2d 556, 564 [241 P.2d 224]; *People* v. *Mendez,* 193 Cal. 39, 46 [223 P. 65].) " (*People* v. *Corrigan,* 48 Cal.2d 551, 559 [310 P.2d 953].) Moreover, he did not confine his examination to defendant but at length questioned several prosecution witnesses—the interpreter and Mrs. Ogata who was of Japanese ancestry, and Mr. White regarding the position of his truck when he saw defendant leaving the Ogata store.

The judgment recites that defendant was found guilty of the crime of "ROBBERY (Sec. 211 PC), a felony, as charged in Count 2. which the Jury found to be Robbery of the first degree .and that defendant was armed as alleged." Count II of the information charged defendant with robbery and

---

[2]The mere fact that the trial judge examines a defendant at some length does not establish misconduct. (*People* v. *Corrigan,* 48 Cal.2d 551, 559. [310 P.2d 953].)

alleged "That at the time of the commission of the above offense said defendant was armed with a deadly weapon, to wit, a revolver." In accord with the order of the Supreme Court and directions contained therein the judgment is modified by striking therefrom the finding as to count II "that defendant was armed as alleged." In all other respects the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.