[Crim. No. 8733. First Dist., Div. Four. Nov. 12, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY ANGELO ROCCO, Defendant and Appellant.

COUNSEL

John F. Shirley, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Sanford Svetcov, Deputy Attoneys General, for Plaintiff and Respondent.

OPINION

**CHRISTIAN, J.**—Johnny Rocco appeals from a judgment sentencing him to concurrent terms of imprisonment after a jury found him guilty of kid-

naping (Pen. Code, § 207) and forcible rape (Pen. Code, § 261). Appellant admitted prior convictions of burglary, forcible rape, and oral copulation.

The victim testified that on June 4, 1969, at approximately 1 in the morning, she drove to an apartment building in Berkeley seeking to find her estranged husband at his girl friend's apartment. She parked her car next to her husband's, which she found in a garage adjoining the apartment. While she was at the entrance of the building, looking for the name of her husband or of his girl friend, appellant and codefendant Vea drove up. Vea approached and began to talk to her. Noticing a strong odor of alcohol on his breath, she returned to her car. Vea followed and, when she got into the driver's seat pushed her to one side, took the keys from her, and grabbed her by the neck. Rocco then entered the car, and Vea drove to an unpopulated place in the Berkeley hills. Vea told Mrs. Kling that he had a gun and on several occasions threatened to use it if she did not cooperate. The victim submitted to intercourse with, first, appellant, then Vea. She submitted without resistance because of fear induced by threats which had been made. After about 30 to 40 minutes, she was returned to the area from which she had been abducted, and soon reported the incident to the police.

Vea testified that the victim consented to intercourse with both men, after requesting them to beat up her estranged husband and to assist her in stealing his car. The victim denied making such suggestions. Appellant did not testify.

█ Appellant first contends that the kidnaping conviction must be reversed in light of *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225], which held that brief movements of a victim which are merely incidental to the commission of another offense and do not substantially increase the victim's risk of harm do not constitute kidnaping. The *Daniels* principle is applicable to simple kidnaping under Penal Code section 207, as well as to aggravated kidnaping under Penal Code section 209. (*People* v. *Williams* (1970) 2 Cal.3d 894, 901 [88 Cal.Rptr. 208, 471 P.2d 1008]; *Cotton* v. *Superior Court* (1961) 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241].)

A review of the background and of the current development of the *Daniels* principle will assist in the consideration of appellant's contention. In *Cotton* v. *Superior Court, supra,* 56 Cal.2d 459, the Supreme Court first declared that movement merely incidental to the commission of another crime was not itself punishable as kidnaping under Penal Code section 207. This construction of the statute was given broader effect in *People* v. *Daniels, supra,* 71 Cal.2d 1119, when the court held that the

kidnaping-for-robbery provision of the code (Pen. Code, § 209) did not apply to forced movement, associated with a robbery, where "the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself." (71 Cal.2d at p. 1139.) *Daniels* involved room-to-room movements incident to robberies; the court did not indicate an intention to expand its holding beyond those facts.

Similarly, in *People* v. *Williams* (1970) 2 Cal.3d 894 [88 Cal.Rptr. 208, 471 P.2d 1008], certiorari denied 401 U.S. 919 [27 L.Ed.2d 821, 91 S.Ct. 903], the court dealt with a gas station robbery in which the victim/attendant was moved within the premises. Answering the Attorney General's contention that the movement of the victim was not "incidental" because not necessary to the commission of the crime, the court declared that because movement appeared "to have been brief and to have been solely to facilitate the commission of the crime of robbery" it was incidental within the meaning of *Daniels*. (2 Cal.3d at p. 902.)

In *People* v. *Timmons* (1971) 4 Cal.3d 411 [93 Cal.Rptr. 736, 482 P.2d 648], the Supreme Court for the first time considered the application of *Daniels* to a case involving movement away from the primary site of a robbery. There a supermarket employee had been forced to drive a car five blocks in daylight on a city street while the robber seized money belonging to the store; the robber then proceeded to rendezvous with an accomplice. (4 Cal.3d at pp. 413-414.) The court first restated the two branches of the *Daniels* test: (1) whether the movement was merely incidental to the commission of another crime; and (2) whether the movement substantially increased the risk of harm. Then, discussing the incidental nature of the movement, the court reemphasized the *Williams* definition, declaring that "A reasonably brief movement for the purpose of facilitating the commission of a robbery is 'incidental' thereto within the meaning of *Daniels*." (4 Cal.3d at p. 414.) Citing with approval *People* v. *Schafer* (1970) 4 Cal.App.3d 554, 560-561 [84 Cal.Rptr. 464], the Supreme Court indicated that criminal liability did not depend on any indoor-outdoor rule or on any specified distance, but rather on the character of the movement as incidental to the crime. In *Schafer*, two rape victims had been moved "about one mile" and "a few hundred yards" and the appellate court had held that *Daniels* compelled reversal of the kidnaping counts. (4 Cal.3d at p. 415.)

On the question of increased danger, *Timmons* held that merely increased probability that the crime would succeed did not support liability for kidnaping. "Rather, we intended to refer to an increase in the risk that the victim may suffer significant physical injuries *over and above those to*

*which a victim of the underlying crime is normally exposed.*" (4 Cal.3d at p. 414; italics added.) As an example of a substantial increase in the risk of harm, the court pointed to the circumstances of *People* v. *Ramirez* (1969) 2 Cal.App.3d 345 [82 Cal.Rptr. 665], where defendant and a cohort abducted a girl, attempted rape, and were chased by police; in a wild race the fugitive car overturned and defendant's cohort was killed. (4 Cal.App.3d at p. 415.) Noting that there was no indication in the facts of *Timmons* that there was any increase in the danger to the victims over and above that inherent in robbery, the court said that "In the circumstances, this brief asportation may conceivably have increased the risk in some slight degree beyond that inherent in the commission of the robberies, but it cannot be said to have 'substantially' increased that risk." (4 Cal.3d at p. 416.) Timmons' kidnaping conviction was accordingly vacated.

After *Daniels,* at least 30 reported appellate decisions have dealt with *Daniels*-based challenges to charges of kidnaping. Of these, 11 were reversals of convictions based on movements within buildings; these cases merely apply the *Daniels* rule to *Daniels* facts.[1] Of the remaining 19, several are of doubtful value as arguably having been superseded by the *Timmons* decision which postdated them.[2]

Analysis of the "substantial danger" part of the *Daniels* test has received less attention, but two conceptual problems have emerged: (1) the definition of a substantial increase in danger; and (2) the extent to which the determination of substantial increase in danger presents a question of fact.

---

[1]*In re Madrid* (1971) 19 Cal.App.3d 996 [97 Cal.Rptr. 354]; *People* v. *Fain* (1971) 18 Cal.App.3d 137 [95 Cal.Rptr. 562]; *People* v. *Moore* (1970) 13 Cal.App. 3d 424 [91 Cal.Rptr. 538]; *People* v. *Dacy* (1970) 5 Cal.App.3d 216 [85 Cal.Rptr. 57]; *People* v. *Moore* (1970) 4 Cal.App.3d 668 [84 Cal.Rptr. 771]; *People* v. *Green* (1969) 3 Cal.App.3d 240 [83 Cal.Rptr. 491]; *People* v. *Cheffen* (1969) 2 Cal.App.3d 638 [82 Cal.Rptr. 658]; *People* v. *Blair* (1969) 2 Cal.App.3d 249 [82 Cal.Rptr. 673]; *People* v. *Ballard* (1969) 1 Cal.App.3d 602 [81 Cal.Rptr. 742]; *People* v. *Ross* (1969) 276 Cal.App.2d 729 [81 Cal.Rptr. 296].

[2]*People* v. *Beaumaster* (1971) 17 Cal.App.3d 996 [95 Cal.Rptr. 360] (movement not necessary, held not "incidental"); *People* v. *Stathos* (1971) 17 Cal.App.3d 33 [94 Cal.Rptr. 482] (Supreme Court's use of "merely" to modify "incidental" held to preclude application of test where movement important or necessary); *People* v. *Ellis* (1971) 15 Cal.App.3d 66 [92 Cal.Rptr. 907] ("incidental" defined as playing no substantial part in the robbery); *People* v. *Lynch* (1971) 14 Cal.App.3d 602 [92 Cal.Rptr. 411] (outdoor movement held not "incidental"); *People* v. *Miller* (1970) 12 Cal.App.3d 922 [91 Cal.Rptr. 97] (asportation of rape victim held not "incidental" because "an important part" of crime); *People* v. *Gibbs* (1970) 12 Cal. App.3d 526 [90 Cal.Rptr. 866] (prison escape; movement of guard held not "incidental" because not "necessary"). But for proper application of test, see *People* v. *Lobaugh* (1971) 18 Cal.App.3d 75 [95 Cal.Rptr. 547].

We have seen that there is no substantial increase in the "risk of harm" within the meaning of *Daniels* where the movement does no more than increase the chance that the intended crime will be carried out successfully; *Daniels-Timmons* requires dangers "over and above those to which a victim of the underlying crime is normally exposed." (4 Cal.3d at p. 414.) Accordingly, in *In re Bryant* (1971) 19 Cal.App.3d 933 [97 Cal.Rptr. 40], the Court of Appeal vacated three kidnap convictions involving movements within a store but held that movement of a hostage for some distance out of the store "accompanied by petitioner's threat to kill him if the police were called, substantially increased the risk of harm to him far beyond that inherent in the crime of robbery." The court noted that additional risks were inherent in any abduction to prevent apprehension by the police. (19 Cal.App.3d at p. 936.)

The second conceptual problem in regard to the "risk of harm" test is the question whether the appellate court, where the question was not put to the jury under appropriate instructions, can make a determination as a matter of law or must remand for trial as a question of fact. In both *Timmons* and *People* v. *Mutch* (1971) 4 Cal.3d 389 [93 Cal.Rptr. 721, 482 P.2d 633], the kidnap convictions were reversed, the court concluding as a matter of law that there was no substantial increase to the victim's danger. In other cases the Courts of Appeal have reversed for determination of the substantial danger question rather than decide the issue themselves. In *People* v. *Chavez* (1970) 4 Cal.App.3d 832 [84 Cal.Rptr. 783], the victim was moved 240 feet off a street into a field and robbed. The court was unable to determine as a matter of law that there was no increased danger. Similarly, in *People* v. *Moreland* (1970) 5 Cal.App.3d 588 [85 Cal.Rptr. 215], where the victims were forced from their front lawn into their home, the court reversed for resolution of the factual question whether there was greater danger as a result of the movement. Likewise, in *People* v. *Anthony* (1970) 7 Cal.App.3d 751 [86 Cal.Rptr. 767], where movement of a service station attendant 30 to 45 feet to a rest room, with a threat to blow his head off if he emerged, was held to raise a fact question.

 In the present case there is arguably an indication of danger to the victim beyond that inherent in the rapes: rape is sometimes accompanied by even more severe physical abuse, and we cannot say that a properly instructed jury could not have found that the victim was in greater danger of severe injury in the secluded place to which she was taken than she would have been if the rapes had been accomplished in the apartment garage where her assailants first captured her. But no instruction was requested or given putting that issue to the jury.

We may put aside the question whether such an instruction should have been given *sua sponte,* because reexamination of the statute under which appellant was convicted of kidnaping, establishes that this kidnap conviction is not affected by *Daniels.* Kidnaping is the forcible movement of a victim into another country, state or county "or into another part of the same county." (Pen. Code, § 207.) While the Supreme Court has, in the cases we have reviewed, applied the phrase "into another part of the same county" so as not to include trivial movements outside the commonsense definition of kidnaping, there is no reason to suppose that distance has ceased to be a factor in kidnaping. Such a view would imply that the court overlooked the reference to the "same county" in the statute, an assumption for which we find no basis. On the contrary, *Cotton* v. *Superior Court, supra,* 56 Cal.2d 459, went no further than to emphasize that movements of a few yards could not fairly be equated to movement "into another part of the same county." (56 Cal.2d at p. 464.) *Daniels,* similarly, was aimed primarily at too broad application of the kidnap statute to room-to-room movements; significantly, much of the authority relied on in *Daniels* supports a "substantial distance" test. (See *People* v. *Lombardi* (1967) 20 N.Y.2d 266, 271 [282 N.Y.S.2d 519, 229 N.E.2d 206] ["the detention or asportation of a victim *for a relatively short time* as an incident to robbery should not normally be prosecuted as kidnaping"] (italics added); Model Pen. Code Tent. Draft No. 11 (1960) at p. 16 [requirement of removal a substantial distance].) In *Timmons,* also, the court said that *"A reasonably brief movement* for the purpose of facilitating the commission of a robbery is 'incidental' thereto within the meaning of *Daniels."* (4 Cal.3d at p. 414; italics added.) ■ On this analysis of *Daniels* and *Timmons,* where the asportation of the victim is unquestionably more than "reasonably brief," the statute is to be given effect in its commonsense meaning, and a kidnaping conviction may be sustained even though there is no substantial increase in the risk of harm as contemplated by *Daniels.* (See *People* v. *Laster* (1971) 18 Cal.App.3d 381, 391 [96 Cal.Rptr. 108].)

■ Forcible movement from the apartment garage to a secluded place in the Berkeley hills could not reasonably be regarded as not amounting to movement "into another part of the same county." Therefore, it was proper to instruct the jury in the language of Penal Code section 207. ■ Here the court went further, and instructed that "the law does not require that the one thus stolen or taken be carried or moved a long distance or any particular distance." (CALJIC No. 652.) Under *Daniels,* that instruction was erroneous. But that error does not require reversal, where the uncontradicted evidence of movement from the apartment garage into the hills conclusively establishes that there was more than a "reasonably brief movement" of the victim.

■ Appellant also argues that there was insufficient evidence to support his kidnaping conviction because there was no evidence that *he* forcibly removed the victim anywhere; codefendant Vea, rather than appellant, forced his way into the victim's car and did the driving to the Berkeley hills. It is argued that appellant did not commit any criminal act until after the journey had been completed. ■ Whether or not a person present at the scene of the crime aided and abetted the perpetration of the crime is a question of fact for the jury to decide. (*People* v. *Dyer* (1963) 217 Cal.App.2d 176, 180 [31 Cal.Rptr. 557].) ■ Here there was evidence that appellant told the victim that if she were quiet she wouldn't be hurt. From this fact, as well as the evidence that both appellant and Vea raped the victim, the jury could have inferred that the kidnaping was part of a common scheme shared by both men. There was substantial evidence to convict appellant of kidnaping.

■ Appellant also claims as error the rape conviction, in that the court upheld an assertion of the psychotherapist-patient privilege (Evid. Code, § 1014) by the victim and thus prevented the defense from bringing forth testimony from a psychiatrist who had earlier treated the victim—testimony which might have had a bearing on her credibility as a witness. The claim is that, under Evidence Code section 1016,[3] the victim had waived the privilege by tendering an issue concerning her mental or emotional condition. But the issues upon which the case proceeded to trial were, of course, tendered not by the victim (who is not a party) but by the prosecution in drafting the information and bringing the case to trial after pleas of not guilty had been entered. The victim appeared at trial reluctantly (and apparently under subpoena); her responses to questions put to her by counsel after she had been sworn as a witness were under compulsion. Those answers did not amount to a tendering by her of an issue as to her own mental condition such as would waive the privilege which was granted to her by the statute. It is not necessary, however, to hold that the privilege was effective; appellant by his conduct of the defense at trial did not join issue in the trial court on the contention which is belatedly raised on appeal. Appellant's codefendant, Vea, did obtain from the prosecutor, at a pretrial hearing, a stipulation that the complaining witness would assert privilege.

---

[3]Evidence Code, section 1016. "There is no privilege under this article as to a communication relevant to an issue concerning the mental or emotional condition of the patient if such issue has been tendered by:

(a) The patient;

(b) Any party claiming through or under the patient;

(c) Any party claiming as a beneficiary of the patient through a contract to which the patient is or was a party; or

(d) The plaintiff in an action brought under Section 376 or 377 of the Code of Civil Procedure for damages for the injury or death of the patient."

The court thereupon declared that the claim of privilege would be upheld and, on Vea's motion, thereupon appointed another psychiatrist to examine the complaining witness and be prepared to testify at trial if called. (Cf. *People* v. *Russel* (1968) 69 Cal.2d 187 [70 Cal.Rptr. 210, 443 P.2d 794], cert. den. 393 U.S. 864 [21 L.Ed.2d 132, 89 S.Ct. 145]; *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 176 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416], suggesting the propriety of such procedure.) The findings of the court-appointed psychiatrist were not put before the jury. The record shows that appellant did not join in Vea's pretrial motion. Moreover, at trial appellant did not call the treating psychiatrist as a witness; thus, neither the psychiatrist nor the prosecuting witness was ever called upon to claim privilege. The court was never called upon by appellant to rule on a claim of privilege. In this state of the record, no claim of error is available to appellant.

■ At trial, appellant attempted to elicit the opinion of a Berkeley police officer, who investigated the victim's complaint, as to whether or not a rape had actually occurred. The judge sustained a prosecution objection, stating that the officer's "conclusions as to whether it was or it was not rape has nothing to do with it." Appellant argues that it was error for the court to reject such testimony as opinion where "There was no effort by the Court to determine the propriety of the subject of opinion or the qualifications of the witness." But Evidence Code section 720 provides, in part, that "Against the objection of a party, . . . special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert." The burden was on appellant, if he wished to bring in opinion evidence, to establish the officer's qualification as an expert, and the competency of opinion evidence on the matter in question. Appellant did not attempt to do so. The trial court did not err in excluding the officer's opinion as to whether or not a rape had occurred.

■ Appellant contends, citing *People* v. *Newton* (1966) 244 Cal.App. 2d 82 [52 Cal.Rptr. 727], and *People* v. *Hurlburt* (1958) 166 Cal.App. 2d 334 [333 P.2d 82, 75 A.L.R.2d 500], that the court erred in unduly limiting cross-examination of the prosecuting witness as to her prior marital difficulties and psychiatric history (including alcoholism and drug abuse). Of course, it would have been error, in a sex case, totally to exclude evidence of personality traits of the complaining witness bearing on her credibility. (*People* v. *Newton, supra,* at p. 88.) But the trial court has discretionary power to limit such evidence so as avoid "undue consumption of time" or "misleading the jury." (Evid. Code, § 352.) Here the court carried on throughout the trial a not always successful struggle to keep the primary focus of attention centered on questions bearing on the guilt or in-

nocence of the defendants. Despite the restrictions complained of by appellant, the jury were made aware, through repetitive questioning by the prosecutor and by both defense counsel, of the following circumstances in the background of the prosecuting witness: (1) she had earlier been committed to a hospital for the treatment of alcoholism and thereafter been subjected to probation supervision for one year; (2) there had been a further brief voluntary commitment to a state hospital for drug abuse; (3) she had a history of marital instability; (4) the probation officer, to whom prosecutrix first complained after the rape, testified that he saw no evidence that she was under the influence of alcohol or drugs (the physician who examined her immediately thereafter testified to the same effect). But questions were allowed as to the state hospital commitment for alcoholism mentioned above, and the later brief hospital commitment for abuse of amphetamine diet pills; (5) cross-examination was allowed on the circumstances of the prosecutrix's separation from her husband, her presence near the apartment of her husband's girl friend, and her suggested motive to seduce the defendants into "cracking" the head of her estranged husband. The only substantial restriction placed on cross-examination by counsel for appellant was that the court sustained an objection to a question whether the prosecuting witness had ever tried to kill herself. The ruling was not error; in any event, it did no harm to appellant where the prosecutrix's background of unhappy difficulties had already been so fully explored.

■ Appellant claims misconduct on the part of the trial court. First, appellant complains that the trial court unfairly disparaged defense counsel. The contention is contrary to the record; the court mildly cautioned counsel for the defense to avoid the use of leading questions on direct examination. This was not misconduct. Appellant also complains that the trial court took over from counsel the direct examination of defendant Vea. ■ However, there is nothing improper about the trial court's examining a defendant, so long as he does not indicate partisanship in doing so. (*People* v. *Bonville* (1968) 268 Cal.App.2d 107, 116 [73 Cal.Rptr. 741]; *People* v. *Williams* (1962) 200 Cal.App.2d 838, 846 [19 Cal.Rptr. 743].) ■ Moreover, "It is settled that a judge's examination of a witness may not be assigned as error on appeal where no objection was made when the questioning occurred. [Citations.]" (*People* v. *Corrigan* (1957) 48 Cal.2d 551, 556 [310 P.2d 953].) ■ Neither appellant nor Vea objected.

■ Appellant also argues that, "During this examination the Court referred to Vea's testimony on four separate occasions as a 'story' . . . 'Story' among other things means: lie, falsehood. In context this is the meaning which was conveyed to the jury regarding the defendant, Vea's testimony." However, the passages referred to by appellant do not support

his characterization: the court apparently used the word "story" to refer generally to defendant Vea's testimony regarding the events in question. This employment of colloquial usage was not misconduct.

█ Finally, appellant complains of the following, which occurred at the end of the court's examination of Vea:

"THE COURT: Do you know of your own knowledge whether Rocco saw her again or are you just basing that on something that somebody might have told you?

"THE WITNESS: No. I am pretty positive Mr. Rocco never saw her again. We laughed the whole thing off. As far as we was concerned she was a— endeavoring into something that she didn't know anything about and thought she was a pretty stupid—

"THE COURT: You had intercourse with her and then you laughed the whole thing off; is that right?

"THE WITNESS: This deal that she wanted to—this thing about us—her husband—

"THE COURT: I think it is a good time to call recess."

Appellant claims that the court used a rhetorical question implying an accusation against Vea. But the question may also be regarded as a fair paraphrase of part of Vea's testimony. It is complained that the court did not allow Vea to answer the question, but the record equally supports an inference that Vea left his answer incomplete and the judge thereafter ordered the recess because it was "a good time" to do so. Neither Vea nor appellant objected, and the matter was not pursued by either of them when the recess ended. In contrast to *People* v. *Byrd* (1948) 88 Cal.App.2d 188 [198 P.2d 561], the comments and questions of the trial judge were moderate and not partisan. Therefore appellant's failure to object suggests that in the context of events at the trial no impropriety was intended by the judge or perceived by trial counsel. (Cf. *People* v. *Wrigley* (1968) 69 Cal.2d 149, 164 [70 Cal.Rptr. 116, 443 P.2d 580].)

█ A final question remains: whether the conviction of both rape and kidnaping violates the prohibition of double punishment embodied in Penal Code section 654.[4] It has recently been held that "The divisibility of

---

[4]Penal Code, section 654, provides in part: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one." (*People* v. *Bauer* (1969) 1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398], cert. den. 400 U.S. 927 [27 L.Ed.2d 187, 91 S.Ct. 190].) This "intent and objective" test has been applied to kidnap-rape cases. (*People* v. *Flores* (1968) 267 Cal.App.2d 452, 459 [73 Cal.Rptr. 118] [movement result of intent to rape; judgment imposing sentence for lesser offense reversed]; *People* v. *Ferguson* (1969) 1 Cal.App.3d 68, 75 [81 Cal.Rptr. 418] [intent to rape formed after abduction; no violation of Pen. Code, § 654].) Here there is no evidence suggesting that there was a separate intent to kidnap; therefore we follow *Bauer* in determining that the offenses may not be punished separately. "[T]he appropriate procedure at the appellate level is to eliminate the effect of the judgment as to the less severely punishable offense insofar as penalty alone is concerned." (*In re Wright* (1967) 65 Cal.2d 650, 656 [56 Cal.Rptr. 110, 422 P.2d 998].) This is not tantamount to a reversal of the judgment of conviction, since Penal Code section 654 proscribes only double punishment. (*People* v. *McFarland* (1962) 58 Cal.2d 748, 763 [26 Cal.Rptr. 473, 376 P.2d 449].) Since rape is punishable by a term of from three years to life (Pen. Code, § 264), while confinement for simple kidnaping may not exceed one to twenty-five years (Pen. Code, § 208), it is the kidnaping sentence which must be set aside.

The judgment is vacated insofar as it imposes a sentence for kidnaping; in all other respects it is affirmed.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied December 9, 1971.