[Crim. No. 15718. Second Dist., Div. Five. Feb. 18, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
NICHOLAS JOSEPH SCHAFER, JR., Defendant and Appellant.

## Counsel

Charles M. Berg, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**REPPY, J.**—After a court trial following a jury waiver, the court found defendant guilty of attempted rape of Diane on September 5, 1967, (Pen.

Code, § § 664-261, subd. 4) count I; rape and kidnaping of Sharon on September 25, 1967, (Pen. Code, § 601, subd. 4 and § 207) counts II and III; and rape and kidnaping of Dolores on October 15, 1967, (Pen. Code, § 601, subd. 4 and § 207) counts IV and V.[1] He was sentenced to state prison on counts I, II and IV. No sentence was imposed on counts III and V, it appearing to the trial court that the kidnapings were part of the rape offenses. The sentence on count I was made concurrent while the sentence on count IV was made consecutive with the sentence on count II.

■■ Defendant's contention that the evidence was insufficient to support the convictions for attempted rape and rape has no merit.

Defendant's position as to the attempted rape of Diane is that she did not see the attemptor well enough to be able to make a sustainable identification. However, there was evidence of adequate observation of defendant, preceding and at the time of the attempt, to make later lineup and in-court identification entirely feasible. She twice saw defendant seated on a bench where the light from a lamp in the parking lot shone on him. She could not help but have had a close look at defendant when he took charge of her baby bottles and conversed with her. There was lighting close by when defendant forced Diane into the yellow automobile. The trial judge believed Diane.[2] Diane's observations are to be evaluated on the basis of these circumstances and not by a technically strict dictionary definition (which should not be attributed to Diane) of the word "glance" which she used in testifying. It is to be noted also that Dolores, as to whom a similar episode took place a month later, testified that defendant told her that he had so accosted women before. This added to the probability of the correctness of Diane's identification. Finally, the remarkable matching of the three descriptions highlighting certain prominent features of defendant was impressive.

Defendant's trial position as to Sharon was that he did not know her at all and that nothing occurred between her and him. Sharon's rape version was not inherently improbable. There was, therefore, simply a conflict in the evidence resolved by the trial judge who believed Sharon and was not impressed by defendant. Moreover, defendant was impeached in his claim that he never knew of Sharon.

A discrepancy of the date of the commission of the offense involving Sharon is not inexplicable.

---

[1] Similar counts relating to Henrietta were not prosecuted because she did not appear as a witness. On a count for grand theft auto, defendant was found not guilty.

[2] The trial judge specifically said, in announcing his decision, that he believed the girls; that defendant had not impressed him and had raised no reasonable doubt.

■ Evidence concerning Sharon's alleged lack of chastity was of no significance in light of the circumstance that the defense constituted a complete denial of acquaintanceship and contact with Sharon. In any event, the circumstance was one to be evaluated by the trial judge.

■ Defendant's trial position as to Dolores was that the act of sexual intercourse was solicited by her and was consensual. Dolores testified to the contrary, stating that the act was entirely against her will and induced by threat of harm if she did not submit. The trial judge believed her.

■ As to all three episodes the evidence in support of the court's findings was of the required substance as defined in *People* v. *Redmond,* 71 Cal.2d 745 [79 Cal.Rptr. 529, 457 P.2d 321], and the determination of credibility and resolution of conflicts made by the trial court will not be disturbed. (*People* v. *Perez,* 65 Cal.2d 709, 713 [56 Cal.Rptr. 312, 423 P.2d 240]; *People* v. *Sweeney,* 55 Cal.2d 27, 51 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Lyons,* 47 Cal.2d 311, 320 [303 P.2d 329].)

■ In connection with the episodes wherein he denied contact, defendant presented the testimony of witnesses placing him at locations different from the crime scenes. This evidence is unavailing to defendant not only because the matter of whether it should be believed was up to the trial court, but because the placement, even if accepted by the trial court, was at times which would not have excluded the presence of defendant at the crime scenes at the times specified by the victim.

■ Defendant contends that the rebuttal testimony of Officer Schack relating what defendant told a Detective Vogel about his contact with Sharon, and given to counter defendant's assertion that he did not know and had not contacted Sharon, was inadmissible because there was a failure to show a waiver by defendant of his right to remain silent or to have counsel at interrogation. The record shows that defendant was given his *Miranda* rights in full; that he gave affirmative acknowledgment that he understood; that when asked if, having his rights in mind, he wanted to talk, he said that he did wish to talk to Detective Vogel. He and Detective Vogel were acquainted with each other. A meeting with Detective Vogel was arranged, and defendant voluntarily talked with him. This combination of circumstances constituted a waiver of the right to remain silent and of the right to have counsel present during interrogation, at least as to defendant being questioned by Detective Vogel. (*People* v. *Johnson,* 70 Cal.2d 541, 555-557 [75 Cal.Rptr. 401, 450 P.2d 865], citing numerous cases; *People* v. *Midkiff,* 262 Cal.App.2d 734, 739 [68 Cal.Rptr. 866].)

■ There is some intimation in defendant's brief that the further contention is being made that the officer's revelation about defendant's interrogation concerning Sharon was wrongfully received as rebuttal evidence. Defendant's position appears to be that it was the type of evidence which should have been offered in the prosecution's case in chief. However, it was proper rebuttal to and impeachment of defendant's testimonial claim that he never knew Sharon and never had had anything to do with her. The foundation for impeachment was properly laid in the cross-examination of defendant. There was no particular reason for the prosecution to expect that defendant would deny any acquaintanceship and contact with Sharon. Curiously enough, and no doubt by inadvertence because of distraction of attention when a problem arose concerning the noise being made by Sharon's baby while she was testifying, Sharon never made an in-court identification. Nor did she testify that she had made an identification at the time of the lineup. However, the description which Sharon gave of her molester, when being cross-examined, was in sufficient detail to allow the judge to draw the inference that he was the defendant. As indicated, defendant, when he testified, denied that he knew Sharon or had had any contact with her. It was then proper for the prosecution to present the rebuttal testimony of Officer Schack to the effect that defendant told Detective Vogel that he did give Sharon a ride, that she made sexual advances to him, and that they had an act of sexual intercourse. (*People* v. *Ambriz,* 260 Cal.App.2d 842, 846-847 [67 Cal.Rptr. 525]; *People* v. *Jeffrey,* 233 Cal.App.2d 279, 281 et seq. [43 Cal.Rptr. 524].) At any rate, the required trial objection was not made to this testimony. (*People* v. *Wilson,* 254 Cal.App.2d 489, 493 [62 Cal.Rptr. 240].)

Diane and Dolores each testified that she identified defendant at a lineup. The lineup evidence only has significance as to Diane. Defendant, of course, admitted being in the company of Dolores. As above indicated, ultimately identity of defendant was adequately established in connection with the episode involving Sharon. Defendant has two objections to this lineup identification evidence. He asserts firstly, that the lineup was unfairly composed; and, secondly, that he had a right to, but did not, have an attorney present, and that there was no showing that he had waived such a right.

Defendant's trial attorney brought out nothing to demonstrate that the lineup was unfair. ■ Only Diane was cross-examined about the lineup. Defense counsel learned from her that all she could remember about it was that a man on one end appeared older than defendant and that all the participants were wearing glasses. The uniform use of glasses is significant. The fact that the man on one end stood out because he appeared older speaks for the fairness of the lineup, not against it. The strong inference

is that defendant did not stand out from the others, that the others were sufficiently similar in appearance.

■ The second attack relates to the lack of counsel. It is conceded that no attorney was present at the lineup. There is nothing in the record to indicate that defendant was specifically advised that he had a right to counsel at the lineup. Defendant's claim that he demanded an attorney was emphatically denied. It is not clear from the record when the lineup was conducted with respect to the occasion of the interrogation when defendant was advised generally of his right to counsel. Even if it was close in time, there is little basis in this case for a contention that the warning and the waiver could have related to the lineup as well as to the interrogation, because probably defendant's waiver was limited to the interview by Detective Vogel. Thus, it must be considered that the lineup was not conducted in accordance with *United States* v. *Wade,* 388 U.S. 218, 236 et seq. [18 L.Ed.2d 1149, 1162, 87 S.Ct. 1926]. However, the *Wade* decision had been out for almost a year, and there was no trial objection made. Under the circumstances, the *Wade* violation, as such, cannot be raised for the first time on appeal. (*People* v. *Armstrong,* 268 Cal.App.2d 324, 326 [74 Cal.Rptr. 37]; *People* v. *Rodriguez,* 266 Cal.App.2d 766, 769-770 [72 Cal.Rptr. 310].)

No contention is made on appeal that trial counsel's not making a *Wade* objection constituted inadequate representation under the doctrine of *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], probably due to the appreciation that counsel had a tactical choice to make in that regard. Moreover, generally, the *Ibarra* rule relates to the failure to present a defense. There was no failure to raise the defense of mistaken identity to which the lineup situation related.

■ Finally, we come to a matter that was not dealt with in the briefs. It could not have been since the governing case, *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225], had not come down. The appeal was submitted without oral argument, so there was no opportunity to go into the matter at such a hearing. It is clear from the record that the movements of Sharon and Dolores by defendant were solely to facilitate the commission of the rapes. (Compare *People v. Lombardi,* 20 N.Y.2d 266 [282 N.Y.S.2d 519, 229 N.E.2d 206], a rape-kidnap case cited in *People* v. *Daniels, supra.*)

With respect to Dolores, the unconsented-to movement was from the traffic light where she thought defendant wanted to be let off to a spot just a short distance forward, partially on the shoulder. It took two minutes to

traverse the distance. The longest estimate of the distance was about one mile.

As to Sharon, the unconsented-to movement started at the point when defendant turned off the road to an area which looked like a parking lot. The distance was said to be about the length of a large lot. It was also described as a few hundred yards.

It is significant that both rapes took place in the very vehicle in which the movements were made. (*People* v. *Daniels, supra,* at p. 1136.)

This language in *Daniels, supra,* is pertinent (p. 1131): "It follows, . . . that those movements were 'incidental to' the robberies and rapes within the meaning of *Cotton,*[3] and that 'the Legislature could not reasonably have intended that such incidental movements be a taking ". . . from one part of the county to another." ' "

The trial judge convicted defendant of the kidnaping counts with respect to both Sharon and Dolores. He did not sentence the defendant with respect to these counts, observing that they were part of the rape transactions. This was not a close enough anticipation of *Daniels.* The convictions on the kidnaping counts must be reversed.

The judgment is affirmed as to counts I, II and IV; it is reversed as to counts III and V.

Stephens, Acting P. J., and Aiso, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 15, 1970.

---

[3]*Cotton* v. *Superior Court,* 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241].