Donald Kenneth PACK, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4766.

Supreme Court of Wyoming.

Nov. 9, 1977.

Floyd R. King and W. Keith Goody, Jackson, for appellant.

V. Frank Mendicino, Atty. Gen., and Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Cheyenne, and Donald Terry Rogers, County & Pros. Atty., Teton County, Wyoming, Jackson, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

Donald Kenneth Pack stands convicted by a Sublette County District Court jury of first-degree rape, in violation of § 6–63(A), W.S.1957, 1975 Cum.Supp., with a sentence of not less than fifteen nor more than thirty years in the Wyoming State Penitentiary. From that conviction and sentence he has prosecuted this appeal. Section 6–63(A) provides as follows:

"(A) Whoever unlawfully has carnal knowledge of a woman or female child forcibly and against her will is guilty of first-degree rape, and shall be imprisoned in the penitentiary for any term not less than one (1) year, or during life."

The evidence of record, relied upon by the State, is substantially as follows: On Octo-

ber 12, 1975, the prosecutrix left the Pink Garter Steak House in Jackson, Wyoming, where she was employed, walked to her car parked behind the building, started her car and headed for her home located twenty miles south of Jackson past Hoback Junction. As she neared the Aspen Drive Inn Theater south of town, a truck began following her and blinking its lights, in response to which the prosecutrix pulled over to the side of the road and stopped. She rolled down the window and the man who got out of the truck behind her said that sparks were coming from near her right rear tire and brake fluid was leaking. The prosecutrix got out of her car, looked at the tire, couldn't see anything, and proceeded to reenter her car. Before she could close the door her assailant grabbed her, pulled her out of the vehicle and, after a struggle, picked her up and placed her in the cab of his pickup truck. As they drove away the prosecutrix attempted to grab the steering wheel and aim the truck at the back of her automobile, but her assailant pushed her away, warning that if she didn't behave herself he would kill her. The defendant-appellant then drove south on Wyoming 187, and after an initial stop near Scott's Horse Palace continued on to Hoback Junction where he turned and headed toward Pinedale, and upon driving a short distance, he turned onto a dirt road and stopped. The prosecutrix was forced to undress, perform oral copulation on her assailant, and then complete sexual intercourse. She testified that she tried "as best" she could to resist but was afraid if she resisted more she would be killed.

After the attack, the prosecutrix testified that she dressed herself, as did the defendant, whereupon he then drove down the dirt road, where his vehicle became stuck. After rocking the truck free with the driver's door open to back out, he drove down the road a short distance farther and stopped again, whereupon he walked the prosecutrix to some trees where he left her.

After observing her assailant turn back onto the main highway, the prosecutrix walked barefoot out of the woods and onto

the main highway where a passing motorist stopped and gave her a ride toward Jackson. When they reached her automobile, still parked on the road, they found a Teton County Sheriff's deputy inspecting it, whereupon she reported the incident to the officer. The prosecutrix was then transported to the Sheriff's Office, interviewed, and taken to the hospital where she was examined by a physician.

Upon leaving the hospital, the prosecutrix was accompanied to an area near the county rodeo grounds and shown a truck which she identified as the one in which she had been abducted. She then described several articles observed by her in the truck, which matched articles found in the truck at the rodeo grounds. The prosecutrix was then taken to the Sheriff's Office and shown photographs of nine different men and she immediately identified the picture of defendant-appellant Pack as her assailant. A warrant was obtained and shortly thereafter, at approximately 7 a. m. on October 13, 1975, Pack was arrested at his home. Later that morning, a warrant was obtained and a search conducted of the residence and place of business of defendant, and several items of clothing were seized.

At trial, the prosecutrix identified the clothing seized in the search of defendant's home and business as being the same as those worn by her assailant, and, as he sat in the courtroom, she also identified the defendant as her assailant.

The examining physician, Dr. James R. Little, testified that he conducted a pelvic examination of the prosecutrix during the early morning of October 13, 1975, and found evidence of recent sexual intercourse in the form of motile sperm.

Special Agent James A. Hilverda of the F.B.I. testified that he found one head hair on the prosecutrix's skirt and one head hair on her panties, both of which exhibited all the same microscopic characteristics as the known hair samples submitted by defendant Pack. Agent Hilverda further testified that three head hairs found on defendant's seat covers, two head hairs found on his shirt, and two head hairs found on his trousers all exhibited the same microscopic characteristics of those of the prosecutrix. From this, Agent Hilverda determined that the head hairs found on defendant's clothing and seat covers could have come from the victim, and those head hairs found on the victim's clothing could have come from the defendant. Agent Hilverda testified further that the victim's hair and the defendant's hair were easily distinguishable.

In addition to examination of the hair samples, Agent Hilverda microscopically examined three pieces of bush, two collected at the crime scene, and one removed from defendant's truck. He concluded that State's Exhibit 58, collected at the scene, and State's Exhibit 57, taken from defendant's truck, were parts of one and the same bush. It was further his opinion that a button found at the prosecutrix's car was of the same color and appearance as the buttons on defendant's shirt, two of which were missing, and that it could have originated from that shirt.

Special Agent Robert P. Spalding of the F.B.I., a forensic serologist, testified that semen stains were discovered on the truck seat covers, the prosecutrix's panties, and the defendant's shorts, but no semen or sperm cells were found. Finally, Paul Sherbel, qualified as a registered land surveyor, testified that according to his calculations, the crime scene was located in Sublette County.

On appeal, appellant Pack raises six points of alleged error:

"I. The Court erred in not dismissing the information because of the intentional destruction by officers of the Teton County Sheriff's Office of evidence both material and exculpatory as to the defendant.

"II. It was prejudicial error to exclude evidence of recent sexual intercourse prior to the alleged rape for purposes of rebutting medical testimony showing semen in the vagina as evidence of rape, and to impeach the credibility of the prosecutrix.

"III. It was reversible error to exclude evidence that certain police witnesses were defendants in a pending lawsuit to show motive or interest for purpose of impeachment.

"IV. It was reversible error for experienced police officers to make statements on the witness stand that were prejudicial to defendant's rights, especially when such evidence was ruled incompetent.

"V. The prosecuting attorney's attempt to elicit sympathy for prosecutrix by asking her emotional leading questions was prejudicial error, and the Court erred in not granting a mistrial.

"VI. There was insufficient evidence to support the verdict of guilty of the crime of first degree rape."

We will affirm the judgment and sentence of the trial court.

## I

## DESTRUCTION OF ALLEGED MATERIAL EXCULPATORY EVIDENCE

During the evening and early morning hours of October 12 and 13, 1975, respectively, the relevant days herein, all radio and telephone communications with both the Teton County Sheriff's Office and the Jackson Police Department were preserved by tape recording on a "Magnasync Moviola Series 1700 Logging Tape Recording System." Pursuant to an order from Undersheriff Larry Gienapp on October 27, 1975, the tapes for the 12th and 13th were taken out of the Sheriff's evidence locker by Officer Gary Reach and given to Administrative Assistant Nora J. Tygum for erasure. Defendant Pack alleges this intentional erasure destroyed not only exculpatory evidence, but evidence material to his assertion of suggested influences in the prosecutrix's selection of his photograph in the photographic array. Based on this alleged destruction of material exculpatory evidence, defendant Pack argues that the denial by the trial court of his motion for dismissal of

the information filed was error. We cannot agree.

■ As specifically pointed out by the trial court in its denial of defendant's motion, all of the evidence presented concerning the contents of the destroyed tapes was to the effect that defendant's name was *not* mentioned in the presence of the prosecutrix, nor was there any evidence identified which could either be considered material to defendant's contentions or exculpatory of the defendant. The appellant has presented nothing in his appeal which would impeach this holding. He continues to merely say that it was possible that his name was used in a radio transmission in the presence of the prosecutrix, thus presenting a suggestive influence for her to select his photograph from the lineup. This, of course, assumes the prosecutrix saw his name on the back of his picture before she selected it, a fact which she denied. Even assuming the missing material may have in some way been relevant and material, its erasure would appear at best as harmless error in light of the other strong physical evidence sustaining defendant's conviction.

■ Such was also the conclusion of the Pennsylvania Superior Court in its decision on a strikingly similar factual situation in *Commonwealth v. Bowes*, 233 Pa.Super. 71, 335 A.2d 718 (1975). In that decision, the Pennsylvania court held that although admission into evidence of the partially erased tape recording of defendant's confession was error, such error stood harmless considering that the jury was informed of the contents of the erasure by live testimony, and in light of the other strong physical testimonial evidence sustaining the conviction. Even an error of constitutional magnitude may be found harmless under such conditions. *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Denial by the trial court of Pack's motion to dismiss the information was, therefore, not error.

## II
### EVIDENCE OF RECENT SEXUAL INTERCOURSE PRIOR TO RAPE

At trial, the prosecution presented evidence to show there was motile sperm present in the vagina of the prosecutrix subsequent to the rape. In connection with this proof, the State moved *in limine* to prevent the defendant from introducing evidence of any sexual intercourse by the prosecutrix prior to the incident involved. Defendant Pack asserts the trial court's sanction of such restriction was error. He urges that in response to the prosecution's presentation of medical testimony confirming the presence of sperm as evidence of rape, he should have been allowed to present evidence of prior, recent sexual intercourse to raise the possibility that the sperm present was from other than the alleged criminal act. As his offer of proof, appellant points to the medical history taken by Dr. Little, the examining physician, in which the prosecutrix admitted having sexual intercourse between seven and ten days prior to the incident at Bar. Unfortunately, defendant's offer does not go far enough.

Defendant's offer lacks a relevant, material connection between the date of the sexual intercourse prior to the alleged rape, and the viability potential for motile sperm. Standing alone, an offer of proof of recent sexual intercourse is not only irrelevant, but prejudicial as well. *State v. Cunningham*, 97 Idaho 650, 551 P.2d 605 (1976); *United States v. Spoonhunter*, 10 Cir., 476 F.2d 1050 (1973); *State v. Koch*, 64 Wyo. 175, 189 P.2d 162 (1948). However, when combined with an offer of medical testimony showing that motile sperm could survive from the prior sexual intercourse to the medical examination after the alleged attack, the admissibility of evidence of recent prior sexual relations would have to be viewed in a different light. In such circumstance, there might well be established a relevant connection between the medical presence of sperm after an alleged rape and prior sexual intercourse, thus necessitating the admission or denial of both proofs.

A trial court may reject an offer of proof where the language of the offer is general, vague and not sufficiently specific. Annot., "Comment Note—Ruling on offer of proof as error," 89 A.L.R.2d 279, 310, § 13; and 3 Wharton's Criminal Procedure (12th Ed. 1975), § 496. An offer of proof must fully and clearly state the facts which counsel desires to prove, and the manner and evidence by which he proposes to prove it. *People v. Jones*, 177 Cal.App.2d 420, 2 Cal.Rptr. 305, 308–309; and *People v. Asta*, 251 Cal.App.2d 64, 59 Cal.Rptr. 206, 214. Furthermore, the offer of proof must specifically indicate the purpose of the testimony. *People v. Sperl*, 54 Cal.App.3d 640, 126 Cal.Rptr. 907. Finally, the facts contained in an offer of proof must be of sufficient detail to establish the admissibility of the evidence and to demonstrate its relevance and materiality. *State v. Umfrees*, Mo., 433 S.W.2d 284. Defendant's failure to fully explain why evidence of prior, recent sexual intercourse was relevant, when considered in the context of the medical evidence given and to be given, discloses a failure to comply with these generally accepted principles. See, *Connor v. State*, Wyo., 537 P.2d 715 (1974) and cases cited therein.[1]

A case uniquely in point with what we have said here about the shortcomings of the offer of proof in the instant case is *Commonwealth v. Richter*, Mass.App., 322 N.E.2d 421. There the defendant was denied the right to inquire of the prosecutrix, on cross-examination, when she had intercourse prior to the alleged offense. Speaking to the effect of defendant's failure to

1. Rule 103(a)(2), WRE (effective January 1, 1978), provides:
   "(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

   \* \* \* \* \* \*

   "(2) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

inform the court of the purpose of the question, the court said:

". . . During the second examination the victim was asked, '. . . [P]rior to this alleged rape, when was the last time you had intercourse?' An exception was taken to the exclusion of that question. The defendant now argues that the judge's ruling precluded the jury from hearing whether there was another explanation for the presence of sperm in the victim's vagina (shown by a hospital record previously admitted in evidence) and that he was effectively deprived of his rights under the Sixth Amendment to the United States Constitution and Article 12 of the Declaration of Rights. We need not consider whether there might be merit to the defendant's argument as he never informed the judge of the purpose to be served by an answer to the question. He had at least two opportunities to do so, the first at the time the ruling was made and again at a bench conference held a short time later at which the judge stated why he considered the question to be improper. This case 'falls into that relatively rare group of cases where, if the purpose or significance of the question is obscure and the prejudice to the cross-examiner is not clear . . . the record must disclose the cross-examiner's reason for seeking an answer to an excluded question.' *Breault v. Ford Motor Co.*, [364 Mass. 352, 353], 305 N.E.2d 824 (1973). See *Commonwealth v. Baker*, 348 Mass. 60, 63–64, 201 N.E.2d 829 (1964)."

See also, *State v. Cosden*, 18 Wash.App. 213, 568 P.2d 802.

■ In the case at Bar, defendant failed to make this connection. Although offering testimony to show recent prior sexual intercourse, defendant made no offer to prove that sperm could remain motile and viable from the time of the prior intercourse to the occasion of the doctor's examination after the attack. Absent such a purpose for the introduction of evidence of prior intercourse, and absent medical evidence that sperm remains motile in the female vagina for this period of time, the offered evidence had no relevance and could only confuse the jury.

For the reasons set out above, the trial court's ruling granting the State's motion in limine was proper.

### III

### POLICE WITNESSES AS DEFENDANTS IN PENDING CIVIL LAWSUIT

■ Within the third issue raised on appeal, defendant Pack asserts it was reversible error for the trial court to exclude relevant testimony, to show motive and interest for purposes of impeachment, that certain police witnesses offered by the prosecution were defendants in a pending civil false-arrest lawsuit. In our view, the prohibition by the trial court of this mode of cross-examination and impeachment was proper. Defendant Pack did not show, as is usually required, that the pending civil action involved either the same parties, the same facts, or the same acts constituting the offense at Bar. 98 C.J.S. Witnesses § 560m. Further, the scope of extended cross-examination tending to show bias or interest rests largely in the sound discretion of the trial court, and we can see no abuse of that discretion here. *People v. Taylor*, Colo., 545 P.2d 703 (1976); *People v. Simmons*, 182 Colo. 350, 513 P.2d 193 (1973); and *State v. Wills*, 3 Wash.App. 643, 476 P.2d 711 (1970). The pendency of the civil lawsuit was too remote a factor to show any bias or prejudice on the part of the testifying officers.

### IV

### STATEMENTS MADE BY POLICE OFFICERS AS WITNESSES

■ Through this fourth point of error, defendant Pack asserts that certain gratuitous comments made by two police witnesses in response to defense questioning were extremely prejudicial and therefore provide the basis for reversible error. Both comments involved inadmissible evidence concerning defendant's possible involvement with other crimes. On the record, as presented to us here, we can per-

ceive no error. The comments made by the officers involved were entirely responsive to the questions asked. If any error did occur, it was invited; and an invited error cannot provide support for reversal on appeal. *Daellenbach v. State*, Wyo., 562 P.2d 679 (1977); *State v. Maggard*, 104 Ariz. 462, 455 P.2d 259 (1969); and *Hightower v. State*, 62 Ariz. 351, 158 P.2d 156 (1945).

## V

### PROSECUTION'S QUESTIONING OF PROSECUTRIX

■ Defendant Pack next asserts that during the redirect examination of the prosecutrix, a number of improper questions were asked concerning her emotional state, being designed solely to create sympathy with the jury. The trial court did not agree and neither shall we. The questions propounded covered areas in which prior defense questioning had been aimed at impeachment, and the sole apparent purpose behind the prosecution's redirect was one of rehabilitation. The questions were neither leading nor improperly based, and their admission by the trial court was not error.

## VI

### SUFFICIENCY OF THE EVIDENCE

■ Finally, in an attempt to tag any bases which may have been previously missed, defendant Pack asserts the trial transcript is lacking in evidence sufficient to support his conviction. As a search of the record quickly reveals, such a contention is clearly without merit. As long as there is any substantial evidence upon which a jury could have based its verdict, its decision will not be interfered with on appeal. *Cornish v. Territory*, 3 Wyo. 96 (1884); *Reilly v. State*, Wyo., 496 P.2d 899, reh. den. 498 P.2d 1236 (1972). That standard of substantial evidence has been met here. *Riggs v. United States*, 5 Cir., 280 F.2d 949 (1960); *United States v. Conti*, 6 Cir., 339 F.2d 10 (1964).

The judgment and sentence of the trial court are affirmed.

Affirmed.

THOMAS, Justice, concurring, with whom RAPER, Justice, joins.

This conviction should be affirmed, and I agree with the justification of the disposition which is found in the majority opinion, with one exception.

The district court refused the proffered evidence of recent sexual intercourse prior to the rape on the ground that such evidence was not relevant. I agree with that ruling by the district court, and I would affirm the district court in that regard no matter how elaborate the offer of proof might be.

In this case the defendant made his stand on the defense of alibi. The nature of the alibi defense is such that it does not raise any issue as to whether the crime charged did in fact occur. *United States v. Spoonhunter*, 476 F.2d 1050 (10th Cir. 1973); and *People v. Lukoszus*, 242 Ill. 101, 89 N.E. 749 (1909). What is in issue is the identity of the accused as the perpetrator of the crime since the establishment of an alibi demonstrates the presence of the defendant at a place so remote that it would have been impossible for him to have committed the crime.

The State presented medical testimony that sperm were present in the victim's vagina to corroborate the fact of penetration. The offered evidence of recent sexual intercourse prior to the rape would at the most demonstrate an alternative event to the penetration in the course of the rape to explain the presence of the sperm. As between this defendant and the State, however, whether penetration occurred in the course of the rape was not in issue. It follows, as the district court ruled, that the offered evidence simply was not relevant. See Rule 401, WRE (to become effective January 1, 1978). This disposition is consistent with the legislative intent manifested in the 1977 revision of the Wyoming sexual assault statutes. § 1, Chapter 70, S.L. of Wyoming, 1977.

Such evidence would, of course, impugn the chastity of the victim, an advantage which has long been sought by diligent counsel defending charges of rape. It no

doubt is helpful in an attempt to try the victim, a practice which Justice Raper in effect condemned in his concurring opinion in *Lopez v. State,* Wyo., 544 P.2d 855 (1976). In the particular circumstances of this case the only possible justification for dealing with the chastity of the victim is to be found in attempting to impeach her credibility.

The general rule is that such evidence is not admissible for that purpose. *State v. Koch,* 64 Wyo. 175, 189 P.2d 162 (1948); *United States v. Spoonhunter,* supra; *State v. Smith,* 259 La. 515, 250 So.2d 724 (1971); *People v. Schafer,* 4 Cal.App.3d 554, 84 Cal. Rptr. 464 (1970); *Shapard v. State,* Okl.Cr., 437 P.2d 565 (1968), cert. den., 393 U.S. 826, 89 S.Ct. 89, 21 L.Ed.2d 97 (1968); *Shay v. State,* 229 Miss. 186, 90 So.2d 209 (1956). Admitting any such evidence when the defendant is committed to the defense of alibi simply permits doing indirectly what the defendant cannot do directly.