**David Forest LOOMER,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. 87–253.**

Supreme Court of Wyoming.

Feb. 8, 1989.

Leonard D. Munker, State Public Defender (argued), and Steven E. Weerts, Asst. Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., John Renneisen, Deputy Atty. Gen., and Karen A. Byrne, Sr. Asst. Atty. Gen. (argued), for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY, and GOLDEN, JJ.

CARDINE, Chief Justice.

Appellant David Loomer appeals his jury conviction of the charges of aggravated robbery for which he was sentenced to 20 to 25 years and kidnapping for which he was sentenced to 25 to 40 years. Appellant was also ordered to pay $50 to the Wyoming State Victim's Compensation Fund and $2500 to Converse County as "reimbursement of costs in this matter."

The issues, as presented by appellant for our determination, are:

"Whether the district court erred in placing the burden of proof on the defense to show that Appellant was incompetent to proceed to trial."

"Whether or not it was error to refuse to instruct on the lesser-included offense of kidnapping."

"Whether or not the district court erred in limiting the defense's questioning into the bias of the State Hospital."

"Whether or not the district court erred in assessing costs of prosecution."

We affirm, except as to costs.

## FACTS

On March 21, 1987, appellant purchased a .22 caliber semi-automatic pistol at a sporting goods store in Douglas, Wyoming. That evening he entered the Pump–n–Pak East store in Douglas, where a clerk, Kyla Bohlander, was working the night shift. He asked if the manager was there. She said no but that he would be back shortly. Appellant then produced the pistol and told her to get the money out the register. She complied, putting the money in a brown paper bag.

Appellant next told her to get her keys because she was taking him to Casper. As she reached for her keys, her hand covered with her coat, she pushed a button triggering a silent alarm. They went outside and entered the truck she had driven to work. Appellant directed Ms. Bohlander to drive out of town towards Casper. She told him to take the truck and leave her, but he told her to shut up and drive. They reached the interstate and headed for Casper.

Meanwhile, back in Douglas, police officers had responded to the alarm and had arrived just in time to see the truck leave. After checking out the store, they determined that a robbery had occurred and notified the dispatcher. The dispatcher, by radio, notified area law enforcement to pick up and hold the occupants of the truck. A highway patrolman saw the truck, followed it, identified it as matching the description given over the radio, and called for assistance.

Ms. Bohlander noticed the lights of the car following them. She testified that appellant apparently realized that they were being followed, that "he got real nervous" and told her to speed up. The highway patrolman following the truck had turned on his flashing lights when another patrolman arrived to assist. When the patrolman turned on his flashing lights, appellant rolled down the window, and the patrolman observed the paper bag being thrown out. Shortly thereafter, appellant ordered her to pull over and stop. A deputy sheriff, summoned by radio, searched the side of the road and found a brown paper bag containing a loaded .22 caliber semi-automatic pistol and $583 in loose cash. The gun was later identified as the one appellant used in the robbery, and the cash corresponded to the amount missing from the store.

At his arraignment, appellant pled not guilty, not guilty by reason of mental illness or deficiency, and not triable by reason of mental illness or deficiency. Appellant was committed to the Wyoming State Hospital pursuant to W.S. 7–11–303 and examined by Dr. F.W. Allport. As a result of motions by defense counsel, appellant was also examined by Dr. Brian Miracle and Dr. Arthur N. Merrell. A competency hearing was held on September 28, 1987. Appellant was found competent to stand trial. He was tried the next day and convicted of aggravated robbery in violation of W.S. 6–2–401(a)(ii), (c)(ii) and kidnapping in violation of W.S. 6–2–201(a)(ii), (b)(i), (d).

I

At the hearing to determine competency, the trial court placed the burden upon appellant to prove lack of competency. After hearing testimony from two psychiatrists, appellant's defense counsel, and appellant himself, the court found that appellant was competent to stand trial and stated that it would have reached the same decision on competency regardless of the allocation of the burden of proof.

Appellant argues that it was error to place the burden on the defense to prove incompetency and that the result would have been different had the burden of proof been placed with the State. W.S. 7–11–303 provides a detailed procedure to determine competency when there is reasonable cause to believe that defendant may be unfit to proceed due to mental illness or deficiency. A hearing is required when the opinion of the designated examiner as to competency to stand trial is contested. W.S. 7–11–303(f). The statute is silent concerning burden of proof on the issue of competency.

■ We have said that the question of competency to stand trial "is a threshold issue, necessary to be resolved to prevent a violation of due process through conviction of a person incompetent to stand trial." *Hayes v. State*, 599 P.2d 558, 563 (Wyo. 1979); see W.S. 7–11–302. This position is consistent with that taken by the United States Supreme Court in *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed. 2d 103 (1975). In *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the Court said that mental competency to stand trial is an element of the due process right to a fair trial. When there is reasonable cause to believe an accused is unfit to proceed, this due process right is best protected by allocating the burden of proof to the party who is seeking to show that the accused is competent to stand trial. We hold, therefore, that in a W.S. 7–11–303(f) hearing arising from a contested opinion on competency, the burden of proof by a preponderance of the evidence rests on the party seeking to establish that the accused is competent.

■ Although the trial court erred in this case by placing the burden of proof with appellant, it was harmless error. In order to constitute a ground for reversal, an error must be prejudicial and affect the substantial rights of appellant. *Matter of Jones*, 702 P.2d 1299 (Wyo.1985). The burden is on appellant to establish an error as prejudicial. *McCarthy v. Whitlock Const. and Supply*, 715 P.2d 218 (Wyo.1986).

Appellant argues that placing the burden of proof on the State would have resulted in a finding that defendant was incompetent. The thrust of his argument is that the evidence raises an inference that he lacked capacity to cooperate with counsel due to mental illness or deficiency. Defense counsel testified that communication with appellant was difficult, and he was uncooperative. Defendant may not prevent his trial by refusing to communicate with his counsel. *State v. Platt*, 130 Ariz. 570, 637 P.2d 1073 (1981). A psychiatrist called by the defense testified that in his opinion appellant had a diminished capacity, but declined to say that appellant had a total lack of capacity. The psychiatrist called by the State testified that, while appellant may be mentally ill, his mental illness did not prevent him from cooperating with counsel.

The trial court specifically found the evidence such that it would have held the appellant competent to stand trial regard-

less of the allocation of the burden of proof. "Allocation of the burden of proof will be significant, in theory at least, only in the rare case when, assuming the evidence is weighed by the preponderance of evidence standard, the conflicting evidence is in equipoise in the mind of the fact finder." *United States v. DiGilio*, 538 F.2d 972, 988 (3rd Cir.1976). In light of the evidence supporting the court's decision and the court's finding that it would have found appellant competent had the burden been placed on the State, we find the error in allocation of the burden of proof to be harmless.

## II

Appellant claims he was entitled to a lesser-included offense instruction. The kidnapping statute, W.S. 6-2-201, provides in pertinent part:

"(a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if he unlawfully confines another person, with intent to:

\* \* \* \* \* \*

"(ii) Facilitate the commission of a felony \* \* \*.

\* \* \* \* \* \*

"(b) A removal or confinement is unlawful if it is accomplished:

"(i) By force, threat or deception \* \* \*."

The crime of kidnapping is complete when subsections (a) and (b) of W.S. 6-2-201 have been accomplished. In this case, it is not contested that appellant was guilty of the crime of kidnapping.

■ Appellant argues that the trial court erred in refusing to instruct the jury on what he contends is a lesser-included offense set forth in subsection (c) of W.S. 6-2-201, which provides:

"(c) If the defendant voluntarily releases the victim substantially unharmed and in a safe place prior to trial, kidnapping is a felony punishable by imprisonment for not more than twenty (20) years."

The test for a lesser-included offense is given in *Balsley v. State*, 668 P.2d 1324 (Wyo.1983), wherein we said:

"[A] crime described by statute may not be necessarily included within another statutory offense unless all of the elements within the claimed lesser offense are to be found in the greater, and unless the greater offense cannot be committed without also committing the putative lesser offense." 668 P.2d at 1329.

Subsection (c) does not create a lesser-included offense. It describes mitigating circumstances rather than elements of the offense.

Subsection (d) of W.S. 6-2-201 provides:

"(d) If the defendant does not voluntarily release the victim substantially unharmed and in a safe place prior to trial, kidnapping is a felony punishable by imprisonment for not less than twenty (20) years or for life except as provided in W.S. 6-2-101."

Subsections (c) and (d) pose one question: Did the defendant voluntarily release the victim substantially unharmed and in a safe place prior to trial? If that question is answered in the affirmative, punishment is imprisonment for not more than 20 years; if in the negative, it is 20 years to life.

The statute defines a single crime, kidnapping, which carries a sentence of 20 years to life but provides for a reduced sentence based upon defendant's conduct subsequent to the kidnapping. Thus, subsection (c) provides for a lesser sentence if four conditions are established: (1) the defendant voluntarily releases the victim, (2) substantially unharmed, (3) in a safe place, (4) prior to trial. If any of these four conditions are not met, the lesser-sentence provision is not applicable.

■ The purpose of the voluntary release provisions is to provide an incentive to release the victim unharmed after a kidnap has occurred. See Model Penal Code and Commentaries, part II, vol. 1 at pp. 232-5 (discussing Model Penal Code § 212.1, which is substantially similar to W.S. 6-2-201). The statute provides a means for reducing a defendant's possible sentence after he has committed the crime

of kidnapping. Defendant is the only person who will benefit from showing that mitigating circumstances are present. *State v. Cornute*, 64 Ohio App.2d 199, 412 N.E.2d 416 (1979). Therefore, the defendant has the burden of going forward with evidence to show that the circumstances exist. The burden of showing mitigating circumstances which are not an element of the offense may be placed on a defendant without violating due process requirements. *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). If competent evidence is produced and a proper instruction is offered, the court should instruct the jury to determine whether the elements of subsection (c) have been established. Cf. *Best v. State*, 736 P.2d 739 (Wyo.1987). After the jury answers the questions posed, the court will sentence accordingly.

Some courts have interpreted similar state kidnapping statutes to place consideration of mitigating circumstances solely in the hands of the sentencing judge. See, e.g., *State v. Stewart*, 175 Mont. 286, 573 P.2d 1138 (1977); *State v. Williams*, 295 N.C. 655, 249 S.E.2d 709 (1978). However, in light of the express factual conditions set out in W.S. 6–2–201, the legislature apparently intended that the discretion of the sentencing court be limited. Therefore, the question should be submitted to the jury when the evidence presented raises the issue.

■ In this case, the question of voluntary release was submitted to the jury in Instruction No. 13, which provided in relevant part:

"The necessary elements of the crime of kidnapping are * * *:

"1. The crime occurred within the County of Converse on or about the date of March 21, 1987; and the defendant

"2. Unlawfully removed another

"3. From her place of business

"4. With the intent to facilitate the commission of a felony

"5. And did not voluntarily release the victim substantially unharmed in a safe place.

"If you find from your consideration of all the evidence that any of these elements has not been proven beyond a reasonable doubt, then you should find the defendant not guilty."

■ The instruction was incorrect as given in that it placed with the State the burden of proving that defendant did not voluntarily release the victim unharmed in a safe place. Had the State failed in this burden of proof, appellant would have been acquitted. That would clearly have been an incorrect result in this case. The instruction as given, however, could only have been of benefit to appellant. The issue of voluntary release was placed before the jury. The jury found that appellant had not voluntarily released the victim substantially unharmed in a safe place. Thus, Instruction No. 13 presented to the jury the very issue for which appellant now argues. If there was error in the instruction, it was harmless beyond a reasonable doubt.

### III

■ Appellant argues that defense counsel were improperly precluded from cross-examining Dr. Allport in regard to bias. Dr. Allport was the psychiatrist at the State Hospital who examined appellant after a court order pursuant to W.S. 7–11–303. He subsequently reported to the court that appellant did not demonstrate mental illness or deficiency either at the time of examination or at the time of the crime.

State Hospital records covering a period of approximately 20 years prior to trial show that appellant had been diagnosed as schizophrenic on several occasions, including a 1976 diagnosis by Dr. Allport of appellant as a paranoid schizophrenic. Dr. Allport testified at the competency hearing that, while he was aware of prior diagnoses of schizophrenia, his current diagnosis was that appellant was feigning mental illness.

Defense counsel was allowed to examine Dr. Allport concerning these apparent inconsistencies at both the competency hearing and at trial. Defense counsel then attempted to impeach Dr. Allport by sug-

gesting an improper motive for his diagnosis, i.e., that Dr. Allport might fabricate a diagnosis in order to limit possible civil liability of the State Hospital. The prosecutor objected to this line of questioning, and the trial court excluded it, effectively ruling that the prejudice of cross-examination outweighed its probative value.

The United States Supreme Court has held that the Confrontation Clause of the Sixth Amendment to the United States Constitution requires a defendant to have some opportunity to show bias on the part of a prosecution witness. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, this does not confer a right to unlimited cross-examination. Attempts to demonstrate bias through cross-examination are subject to the wide discretion of the trial court in determining the admissibility of evidence. *United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).

The theory of bias on the part of Dr. Allport advanced by appellant[1] depends in large part on a chain of conjecture. The logic of appellant's theory of motive is as follows:

1) Dr. Allport works for the State Hospital;

2) the records of the State Hospital show that appellant had previously been described as "a danger to others";

3) appellant was released rather than kept in the State Hospital;

4) after his release, appellant committed aggravated robbery and kidnapping:

ergo,

a) appellant could not have committed these crimes unless he was released by the State Hospital;

b) the victims of these crimes might sue the State Hospital for releasing appellant;

c) Dr. Allport might have considered the possibility of such litigation when making his diagnosis;

d) Dr. Allport's diagnosis might benefit the State Hospital if such civil litigation was filed;

therefore, appellant argues, Dr. Allport might have had a motive to fabricate his diagnosis.

No evidence of any planned or pending civil litigation was presented. There was no indication of a threat of litigation involving the State Hospital or that Dr. Allport considered such or was motivated to "fabricate" his diagnosis. Defense counsel's theory of bias rests solely on inferences drawn from an improbable, remote hypothetical set of circumstances.

Assuming arguendo that this is relevant evidence, the trial court has discretion under Rule 403, W.R.E. to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury * * *." The scope of extended cross-examination tending to show bias or interest rests largely in the discretion of the trial court. *Pack v. State,* 571 P.2d 241 (Wyo.1977). "A trial court's discretionary ruling on evidence will not be upset except for clear abuse which is appellant's burden to demonstrate." *Amin v. State,* 695 P.2d 1021, 1027 (Wyo.1985). Given the highly speculative nature of defense counsel's theory, we do not find the trial court abused its discretion by limiting cross-examination in this area.

## IV

■ Prior to trial, appellant filed an affidavit of indigency which listed approximately $120 in assets. He has been represented throughout all proceedings by counsel provided through the public defender's office. At the sentencing hearing, the prosecutor asked that appellant be "ordered to reimburse the State for a portion of his cost of defense and the cost of this trial." In addition to the sentence of imprisonment, the judgment and sentence of the trial court included an order for appellant to pay Converse County $2500 "as

---

**1.** At trial, defense counsel characterized this bias as a "possible conflict of interest" on the part of Dr. Allport. On appeal, it is characterized as "the possible bias of the Wyoming State Hospital to fabricate a diagnosis."

reimbursement of costs in this matter." After the trial court was informed that appellant had a bank account with a balance in excess of $2500, it entered an order for release of funds in the amount of $2500, to be paid to the trial expense account of the Converse County Attorney's office.

We have previously held that a court cannot tax costs in a criminal case without express statutory authority. *Burke v. State*, 746 P.2d 852 (Wyo.1987). The current Wyoming Statutes provide that "[p]ayment of the costs of prosecution may be added to and made a part of the sentence in any felony or misdemeanor case." W.S. 7–11–505. This statute was enacted in 1987, with an effective date of May 22, 1987. 1987 Wyo.Sess.Laws, ch. 126 § 2. The statutes in effect immediately prior to the enactment of W.S. 7–11–505 did not authorize assessing costs of prosecution against a convicted defendant. *Burke v. State*, 746 P.2d at 858.

Appellant committed his crimes on March 21, 1987, prior to the effective date of W.S. 7–11–505. He now argues that imposition of costs as part of his sentence was not statutorily authorized, and as applied to him, W.S. 7–11–505 is a constitutionally prohibited ex post facto law.

The United States Constitution, Art. 1, § 10, and the Wyoming Constitution, Art. 1, § 35, both prohibit ex post facto laws. We have previously said that "the constitutional interdiction of ex post facto laws reaches out to every law which deprives the accused of any substantial right or immunity possessed by him at the time when he is said to have committed the offense charged." *In Interest of Jones*, 500 P.2d 690, 692 (Wyo.1972). However, not every change in the law that adversely affects a defendant is subject to the prohibition against ex post facto laws. Changes in procedure generally do not come within the ex post facto doctrine. *In Interest of Jones*, 500 P.2d at 692. Therefore, this issue turns on whether assessment of costs is a procedural or substantive detriment.

The United States Supreme Court has said " 'any statute * * * which makes more burdensome the punishment for a crime, after its commission, * * * is prohibited as ex post facto.' " *Dobbert v. Florida*, 432 U.S. 282, 292, 97 S.Ct. 2290, 2298, 53 L.Ed. 2d 344 (1977) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 68, 70 L.Ed. 216 (1925)). The language of W.S. 7–11–505 clearly authorizes costs of prosecution to be *"added to and made a part of the sentence."* An increase in the potential sentence for a crime which becomes effective after the criminal act is a substantive detriment. Therefore, costs of prosecution may not be assessed against appellant under W.S. 7–11–505 without violating the ex post facto prohibition.

The judgment and sentence of the court does not specify if the costs imposed are "costs of prosecution." Since other costs may be legally imposed, we modify the sentence to delete the reference to costs, and remand to the district court for a determination of what costs may be imposed under the statutes in effect at the time appellant committed his criminal acts.

Appellant also asks that we find W.S. 7–11–505 facially unconstitutional. In light of our holding that the statute does not apply to appellant, we do not reach this issue.

AFFIRMED AS MODIFIED.