# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 9

OCTOBER TERM, A.D. 2024

January 16, 2025

KENNETH CHARLES HOFFMAN,

Appellant
(Defendant),

v.

S-24-0153

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Weston County*
*The Honorable Matthew F.G. Castano, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Brandon Booth, Wyoming State Public Defender;* Kirk A. Morgan, Chief Appellate Counsel.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

* An order substituting Brandon Booth for Ryan Roden was entered on October 10, 2024.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    A jury convicted Kenneth Charles Hoffman of five counts of sexual abuse of his minor stepdaughter, SD.  He contends the district court abused its discretion when it excluded evidence of SD's prior sexual activity pursuant to Wyo. Stat. Ann. § 6-2-312 (the rape shield statute).  We affirm.

## *ISSUE*

[¶2]    Mr. Hoffman submits one issue which we rephrase: Did the district court abuse its discretion when it excluded evidence of SD's prior sexual activity after applying the rape shield statute?

## *FACTS*

[¶3]    According to her testimony, on March 10, 2023, 16-year-old SD wanted to calm her nerves after having "drama" with her friends.  She contacted Mr. Hoffman, her stepfather, who gave her permission to drink a beer, and advised her she could find whiskey and Coke in his room.  SD drank half a beer and half a whiskey and Coke before Mr. Hoffman arrived home.  While the two talked, SD drank the rest of her whiskey and Coke and took two hits from Mr. Hoffman's "weed pen."  SD began to feel like she could not move.  Mr. Hoffman then touched and licked SD's breasts, inserted his finger and his penis into her vagina, and attempted to insert his penis into her mouth.

[¶4]    The next morning, SD reported the incident to family members, who contacted law enforcement.  Sergeant Travis Garhart took SD to the hospital for a sexual assault examination.  This included testing a tampon SD had inserted that morning.  Seminal fluid was detected on the tampon, but there was insufficient DNA to identify its source.  Sergeant Garhart interviewed SD on three separate occasions.  On one of those occasions, SD told him she had been sexually active with someone other than Mr. Hoffman about a week and a half prior to the incident.

[¶5]    The State charged Mr. Hoffman with two counts of second-degree sexual abuse of a minor, two counts of first-degree sexual abuse of a minor, and one count of attempted first-degree sexual abuse of a minor.  Using the procedure set forth in the rape shield statute, Mr. Hoffman filed a motion to introduce testimony at trial about Sergeant Garhart's interview of SD where she indicated that she had been sexually active.  Mr. Hoffman contended this evidence would explain the presence of unidentified seminal fluid on SD's tampon.  The district court denied the motion.

[¶6]    A jury found Mr. Hoffman guilty of all five charges.  The district court merged the charges into one for sentencing and sentenced him to 40 to 50 years in prison.  This appeal followed.

1

## STANDARD OF REVIEW

[¶7]   We review a district court's decision to exclude evidence under the rape shield statute for an abuse of discretion.  *Detimore v. State*, 2024 WY 109, ¶ 8, 557 P.3d 1172, 1175 (Wyo. 2024) (citing *Sparks v. State*, 2019 WY 50, ¶¶ 34, 38, 440 P.3d 1095, 1106, 1108 (Wyo. 2019); *Carroll v. State*, 2015 WY 87, ¶ 20, 352 P.3d 251, 257 (Wyo. 2015); *Stogner v. State*, 674 P.2d 1298, 1300 (Wyo. 1984)).

> The "abuse of discretion" standard of review requires this Court to consider the reasonableness of the district court's ruling.  *Ortiz v. State*, 2014 WY 60, ¶ 92, 326 P.3d 883, 901 (Wyo. 2014); *Schreibvogel v. State*, 2010 WY 45, ¶ 12, 228 P.3d 874, 880 (Wyo. 2010). "Determining whether the trial court abused its discretion involves the consideration of whether the court could reasonably conclude as it did, and whether it acted in an arbitrary and capricious manner." *Lancaster v. State*, 2002 WY 45, ¶ 11, 43 P.3d 80, 87 (Wyo. 2002) (citing *Trujillo v. State*, 2 P.3d 567, 571 (Wyo. 2000)).

> *Triplett v. State*, 2017 WY 148, ¶ 23, 406 P.3d 1257, 1262 (Wyo. 2017).  The appellant bears the burden of establishing an abuse of discretion.  *Blair v. State*, 2022 WY 121, ¶ 17, 517 P.3d 597, 601 (Wyo. 2022) (citing *Kincaid v. State*, 2022 WY 4, ¶¶ 31–32, 501 P.3d 1257, 1263 (Wyo. 2022)).

*Detimore*, ¶ 8, 557 P.3d at 1175.

## DISCUSSION

[¶8]   Wyoming's rape shield statute was enacted to end

> a long-standing tradition that rape victims could be discredited as witnesses based on prior sexual conduct.  This tradition was based on the faulty notion that women who engaged in nonmarital intercourse were immoral and likely to engage in such conduct on any given occasion, and was deemed prejudicial and humiliating to the victim.

*McGarvey v. State*, 2014 WY 66, ¶ 18, 325 P.3d 450, 456 (Wyo. 2014) (quoting *Stogner v. State*, 792 P.2d 1358, 1362 (Wyo. 1990)).

[¶9] The statute "mandates a procedure that must be followed and a showing that must be made if a party seeks to introduce [evidence concerning the victim's past sexual conduct]." *Moser v. State*, 2018 WY 12, ¶ 41, 409 P.3d 1236, 1248 (Wyo. 2018); Wyo. Stat. Ann. § 6-2-312. The defendant must provide pretrial notice of his intent to use evidence of the victim's past sexual conduct and make an offer of proof of the relevance of the evidence. Wyo. Stat. Ann. § 6-2-312(a)(i) and (ii). If the district court finds the offer of proof sufficient, it must conduct a confidential hearing at which the victim may be questioned. Wyo. Stat. Ann. § 6-2-312(a)(iii). If the court determines the "probative value of the evidence substantially outweighs the probability that its admission will create prejudice," the evidence will be admissible. Wyo. Stat. Ann. § 6-2-312(a)(iv). "Although the rape shield statute is not an absolute bar to the admissibility of . . . evidence [concerning the victim's past sexual conduct], 'only in the unusual case will the probative value of this kind of evidence substantially outweigh its highly probable prejudicial effect on the victim[.]'" *Detimore*, ¶ 10, 557 P.3d at 1176 (quoting *Sparks*, ¶ 38, 440 P.3d at 1107–08; *Moser*, ¶ 42, 409 P.3d at 1249; *McGarvey*, ¶ 18, 325 P.3d at 456 ("[T]he sort of evidence to which the [rape shield] statute relates is 'generally *not* admissible' in Wyoming." (quoting *Stogner*, 792 P.2d at 1362))).

[¶10] As required by the statute, Mr. Hoffman filed a motion seeking the admission of evidence covered by the rape shield statute—SD's interview where she told Sergeant Garhart she was sexually active and that she had sex with someone other than Mr. Hoffman approximately a week and a half prior to the incident. After a hearing, the district court denied the motion. It held:

> [Mr. Hoffman's] desire to admit such evidence of SD's sexual history is to establish for the jury that there may be another explanation for the presence of seminal fluid other than that it was left by [Mr. Hoffman].
>
> The Court disagrees with [Mr. Hoffman] and does not view these circumstances as being unusual enough to fall outside the realm of Wyo. Stat. Ann. § 6-2-312. The Court further finds that although the evidence has some probative value, it is not enough to outweigh the prejudicial effect of eliciting this testimony at trial.

[¶11] Mr. Hoffman argues that the district court should have permitted him to introduce evidence of SD's previous sexual activity to provide an alternate explanation for the seminal fluid discovered on SD's tampon following the charged crimes. He contends that the district court's focus on whether this case was "unusual" was misplaced and that it should have instead focused on whether the probative value of his proposed evidence substantially outweighed any prejudice. Mr. Hoffman cites *Teemer v. State*, 615 So. 2d

3

234 (Fla. Dist. Ct. App. 1993), and *Commonwealth v. Fitzgerald*, 590 N.E.2d 1151 (Mass. 1992) in support of his argument.

[¶12]  In *Fitzgerald*, testing revealed the presence of type B-antigens on the victim's underwear.  Among three potential sources of the antigens, the victim, her boyfriend, and the defendant, none were type B secretors.  *Fitzgerald*, 590 N.E.2d at 1153.  A medical witness had testified that detectable semen could survive in a vagina for "up to five days" after sexual activity.  *Id.* at 1155.  The defendant filed a motion pursuant to the rape shield statute, seeking to ask the victim whether she had intercourse with anyone other than her alleged attacker on the night of the alleged rape.  The trial court denied the motion, holding that the evidence would be improper unless the defendant could prove the identity of a male who might have secreted the type B-antigens.  *Id.* at 1154.  The appellate court reversed.  It held evidence that the victim engaged in sexual activity on the night of the alleged rape (and up to five days prior) did not violate the rape shield statute because it was relevant to "support the defendant's theory of the case: that someone else had attacked the [victim] and she had wrongly accused the defendant."  *Id.* at 1155–56.

[¶13]  In *Teemer*, the victim alleged she had been sexually assaulted by two assailants. She claimed the defendant anally penetrated her and had ejaculated, and that the other perpetrator had not penetrated her.  *Teemer*, 615 So. 2d at 235.  The doctor at a rape treatment center who examined the victim found no evidence of trauma to the victim's anus and did not find any semen in the victim's anal cavity.  *Id.*  Semen found in the victim's vagina and cervix did not match the defendant's DNA.  *Id.*  The State sought to exclude the result of the DNA test, arguing that because the victim had intercourse with her boyfriend four hours before the alleged rape, the DNA was not relevant to the identity of the perpetrator, and was only probative of inadmissible prior sexual conduct.  *Id.*  The trial court excluded the evidence.  *Id.* at 236.  The appellate court reversed, holding that the DNA test results were "relevant and crucial to the defense of misidentification," especially considering proffered medical testimony that "sexual battery victims often think that they have been anally penetrated, when in fact they have not been."  *Id.*

[¶14]  In both cases, the defendant established a material connection between the victim's prior sexual conduct and identification or misidentification of the perpetrator—in *Fitzgerald*, testing revealed antigens that could not have come from the victim, her boyfriend, or the defendant; and in *Teemer*, the only DNA found did not match the defendant's DNA.  Unlike the evidence in *Fitzgerald* and *Teemer*, here there was insufficient DNA from the semen on the tampon to identify its source.  The DNA neither included nor excluded Mr. Hoffman.

[¶15]  The facts here are more like those in *Pack v. State*.  In *Pack*, the State introduced evidence of sperm in the victim's vagina after the alleged rape.  In response, the defendant attempted to introduce evidence the victim had sexual intercourse between seven and ten days prior to the alleged rape, arguing the evidence was relevant to show that the sperm

4

could have come from another source. *Pack v. State*, 571 P.2d 241, 245 (Wyo. 1977). We held, "[d]efendant's offer lacks a relevant, material connection between the date of the sexual intercourse prior to the alleged rape, and the viability potential for motile sperm. Standing alone, an offer of proof of recent sexual intercourse is not only irrelevant, but prejudicial as well." *Id.* We noted, with evidence "showing that motile sperm could survive from the prior sexual intercourse to the medical examination after the alleged attack, the admissibility of evidence of recent sexual relations . . . might well [establish] a relevant connection between the medical presence of sperm after an alleged rape and prior sexual intercourse . . . ." *Id.*

[¶16] Mr. Hoffman presented no evidence indicating that seminal fluid from intercourse a week and a half prior to the alleged rape could remain in sufficient quantities to be present on a tampon inserted the morning after the alleged rape. The only evidence in the record indicates the opposite: the forensic analyst testified semen can survive only up to five days in a vagina. Mr. Hoffman did not connect SD's sexual activity a week and a half prior to the alleged rape to the seminal fluid discovered after the crimes. The district court reasonably concluded that the probative value of SD's prior sexual activity "[was] not enough to outweigh the prejudicial effect of eliciting the testimony at trial." Mr. Hoffman has not established an abuse of discretion. *See Detimore*, ¶ 8, 557 P.3d at 1175.

## *CONCLUSION*

[¶17] The district court did not abuse its discretion when it ruled evidence that SD was sexually active a week and a half prior to the alleged crimes was precluded by Wyoming's rape shield statute, Wyo. Stat. Ann. § 6-2-312. We affirm.